FILED

2010 Feb-10  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| KAY WILLIAMS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 6:08-CV-01527-LSC |
| | ] | |
| K-MART CORPORATION, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, K-Mart Corporation ("K-Mart"), on December 21, 2009.  (Doc. 21.)  Plaintiff Kay Williams ("Williams") sued K-Mart for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), *et seq.*; invasion of privacy; outrage; and negligent or wanton supervision, training, and retention.  (Doc. 1.)  Defendant moved for summary judgment on all of Plaintiff's claims.  (Doc. 21.)  The issues raised

in Defendant's motion for summary judgment have been briefed[1] by both

parties and are now ripe for decision.  Upon full consideration of the legal

arguments and evidence presented, Defendant's motion will be granted in

part and denied in part.

II.    Facts.[2]

Williams began working for Defendant on May 19, 2001, as a part-time

Checkout Associate at a K-Mart retail store in Jasper, Alabama ("the Jasper

store").  Throughout her employment at K-Mart, Williams received positive

performance evaluations and a number of promotions.  At all times relevant

to this case, David Hamilton ("Hamilton") was the District Manager for the

Jasper store, and Dwight Allen ("Allen") was the Store Manager.

---

[1]Both the defendant and the plaintiff filed unopposed motions to extend the page limits of their summary judgment briefs.  (Docs. 20, 25, 30.)  Those motions are GRANTED.

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Williams testified that in April 2005, Alan Hadaway ("Hadaway") began making sexually harassing comments to her.  Hadaway started working for K-Mart in October 1997, and he became Loss Prevention Manager in 2001. Loss Prevention Manager was considered a management position, but Hadaway did not supervise other store associates, and he could not hire, fire, or promote associates.  According to Williams, Hadaway's harassing comments included:

> -Here's a box of condoms, do you want to go use them?
> -How about I throw you on the counter and we go for it now?
> -Can I nibble your neck?
> -What about I nibble your neck for a while?
> -Let's go mess around after work.
> -Do you want to go mess around for a while?
> -What would it take for you to sleep with me today?
> -What would you do if I kissed you?
> -Today would be a good day to mess around because we are short on staff today and nobody would catch us.
> -If the [team of coworkers] was not over there, I would throw you on the floor and we could work out our frustrations right now.

Williams claims Hadaway made sexually inappropriate remarks like these to her on a daily basis.

Williams also testified that Hadaway often touched her inappropriately.  She contends that he tickled her side on three or four

occasions, hugged her from behind, put his arms around her and let his hands slide down towards her breasts, and massaged her shoulders. Williams says that in May 2006, Hadaway approached her in the receiving area where she was working, sat behind her on a stool, straddled her, grabbed her and pulled her close, wrapped his arms around her, and touched her butt and breasts. A coworker, Anita Muhaffey, later submitted a statement to Hamilton stating she walked into the receiving room and saw Williams pinned against the receiving table and Hadaway had his hands "all over her," including on Williams's breasts and butt. (Hamilton Dep., Pl. Ex. 14.) Hadaway let go of Williams and walked away when he saw Muhaffey.

Williams testified that she discouraged Hadaway's behavior, but she was afraid of him. Specifically, Williams said she was scared that if he found out she complained of his conduct, Hadaway might use his position to accuse her of stealing and have her fired. She maintains that his conduct made her feel nasty, belittled, disgusting, afraid to come to work, and afraid to date.

K-Mart's sexual harassment policy requires an associate who feels he or she is a victim of harassment or discrimination to immediately report that

to their supervisor, Store Manager, or Store Director.  If an associate feels uncomfortable reporting to those individuals, the associate should report the discrimination or harassment to the District Manager, Vice President, Field Human Resources, or Regional Human Resources Director, and a toll-free hotline for anonymous complaints is available.  K-Mart also has an "Open Door Policy," which encourages associates to report any work or personal problems to their immediate supervisor, Human Resources, or any member of management.

Williams testified she complained to Brenda Smith ("Smith") about Hadaway's conduct in the fall of 2005.  Smith was a "key holder" who had the authority to open and close the Jasper store, but only had supervisory duties when another manager was not present in the building.  Williams testified that she reported to Smith for work, and her complaint was made in the late evening after 5:00 p.m.  Williams said that Hadaway made an inappropriate comment about someone else in the store in front of both her and Smith.  Smith said she did not like the types of comments Hadaway made, and Williams said she did not either—and Hadaway made those kinds of comments to her all the time.  Williams testified that Smith then told her

that Hadaway once told Smith that "older women make better lovers." Williams asked Smith how they could make the behavior stop, and Smith said she would talk to Frankie Williams, an assistant manager. Williams testified that Smith later told her that she did talk to Frankie Williams about Hadaway's conduct.

A subsequent written statement by Frankie Williams on August 10, 2006, states that in October or November 2005, she received a call at home from Smith about a complaint of sexual harassment. The statement says that Frankie Williams was told the "names concerned and a brief description of the problem." Frankie Williams wrote that she advised Smith to go to Allen, the store manager, and tell him of the problem. The statement reflects that Frankie Williams later called Allen and asked if Smith spoke with him, and he said "yes." (Hamilton Dep., Pl. Ex. 10.) No investigation was conducted at that time, and no action was taken against Hadaway. Allen testified he does not remember if Smith talked to him about allegations of sexual harassment. Allen also said he does not remember if Frankie Williams called him to ask about Smith's report.

Williams testified that she also complained about Hadaway's

misconduct directly to Frankie Williams in or around May 2006.  Williams said she did not give Frankie Williams details, but she told her about the comments Hadaway made and about him touching her, and she indicated that an incident had occurred recently.  Williams did not give Frankie Williams specifics about Hadaway's actions in the receiving area in May 2006.

Frankie Williams's subsequent statement reflects that "one of the employees" asked her in May 2006 if she was aware of problems between Hadaway and some of the women at the store.  Frankie Williams wrote that while the two were talking, other associates came and commented and said something needed to be done.  In the statement, Frankie Williams said that she went to Allen the following day and talked to him about Hadaway. Allen's response was: "He didn't know what he was going to do with that boy."  Frankie Williams wrote she told Allen he needed to do something or there would be problems.  Frankie Williams also wrote that "none of the individuals ever came to me directly."  (Hamilton Dep., Pl. Ex. 10.)  No investigation was conducted at that time, and no action was taken against

Hadaway.  Allen testified he does not remember if Frankie Williams told him about any issues between Hadaway and female employees.

Around January or February 2006, Emmitt Jackson ("Jackson") arrived at the Jasper store as a new assistant manager.  Jackson testified that "[r]umors were going through the store flying off the handle [about Hadaway]," but associates said they did not want to get involved or make formal complaints.  (Jackson Dep. at 31-32.)  Jackson understood that the rumors involved allegations of sexual harassment, but he felt he did not have the right to conduct an investigation until someone came forward with concrete facts.  (*Id*. at 34.)  Jackson testified that Frankie Williams told him "there has been complaints around here all day about [Hadaway] sexually harassing females."  Jackson said he did not get specifics, and thought he might be getting "set up" as the only African-American manager in the store.  (*Id*. at 37-38.)

Stephanie White ("White"), an associate, did eventually approach Jackson and tell him she had been sexually harassed, had complained previously to Allen, and nothing was done.  However, Jackson did not pursue an investigation at that point.  Jackson took action a week later when he

was in the inventory area of the store with White and a light flashed behind him while White was picking up a box.  When Jackson turned, he saw Hadaway holding a camera and suspected Hadaway may have taken a picture of White.  At that point, White said she would submit a written complaint, and she gave Jackson Williams's name as another potential victim of harassment.

Based on the information White gave him, Jackson approached Williams and asked her to submit a written statement regarding Hadaway's conduct.  Williams agreed.

On July 10, 2006, Jackson spoke with Allen about the formal complaints made by Williams and White.  Allen indicated to Jackson this was the first he had heard of the situation and asked why the associates went to Jackson and not him.  Jackson testified that Allen refused to look at the written complaints because they were not brought to him directly.  Jackson subsequently contacted Hamilton and told him about the associates' complaints.

On or around July 13, 2006, Williams and White, along with Frankie Williams and Vickie Shadinger, the Human Resources coach, met with Allen

to discuss the allegations of sexual harassment involving Hadaway.  Williams testified that Allen commented to the group that he had no idea Hadaway harassed anyone in the store, and Frankie Williams responded that he did know because she told him herself.

On July 14, 2006, Allen met with Hamilton and provided him with a written statement.  At that meeting, Hamilton told Allen that because there were assertions Allen had known about the alleged harassment by Hadaway, Hamilton would conduct an investigation himself.  Hamilton interviewed and obtained written statements from White, Williams, Jackson, Allen, and Muhaffey.

After meeting with Allen and learning there was an investigation into complaints against him, Hadaway resigned his employment on July 15, 2006. As a result, Hamilton never talked with Hadaway as a part of his investigation.  No member of management was reprimanded or counseled at the conclusion of Hamilton's investigation.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

A.   Title VII Sexual Harassment.

In order to establish a hostile environment claim under Title VII based on sex discrimination by a coworker, a plaintiff must show: (1) that she belongs to a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment was based on her sex, (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive working environment, and (5) a basis for holding the employer liable.  *Mendoza v. Borden Inc.*, 195 F.3d 1238, 1245 & 1248 n.5 (11th Cir. 1999); *see also Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1502-03 (11th Cir. 1985).  K-Mart does not dispute that Williams belongs to a protected group and Hadaway's alleged harassment was based on her sex.  Rather, K-Mart

contends they are entitled to summary judgment with regard to Plaintiff's hostile environment claim because Williams cannot establish that: (1) Hadaway's alleged harassment was unwelcome, (2) the alleged misconduct was sufficiently severe or pervasive, and (3) K-Mart is liable for the alleged harassment.

        1.    Unwelcome Conduct.

"[T]he question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986). "The correct inquiry is whether respondent by her conduct indicated that the alleged sexual advances were unwelcome." *Id.* "In order to constitute harassment, [the alleged harassing] conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).

There is no evidence Plaintiff solicited or invited Hadaway's behavior. Williams testified that Hadaway's conduct made her feel nasty, belittled,

disgusting, afraid to come to work, and afraid to date.  Her responses to

Hadaway's comments included reminders that "he didn't need to say those

things to me, he was a married man," and that he should not engage in

conduct he proposed.  (Pl. Dep. at 98-99.)  Plaintiff also testified that she

complained to both Smith and Frankie Williams about Hadaway.  Viewing the

evidence in the light most favorable to the plaintiff, Williams has presented

sufficient evidence to create a genuine issue of material fact whether she

regarded Hadaway's behavior as undesirable, offensive, and unwelcome.

      2.    Sufficiently Severe or Pervasive.

The requirement "that the conduct complained of was 'sufficiently

severe or pervasive to alter the conditions of employment and create an

abusive work environment'[] is the element that tests the mettle of most

sexual harassment claims."  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583

(11th Cir. 2000)(quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1998)).  "Requiring the plaintiff to prove that the harassment is severe or

pervasive ensures that Title VII does not become a mere 'general civility

code.'" *Id*.  "Accordingly, a plaintiff must establish not only that she

subjectively perceived the environment to be hostile and abusive, but also

that a reasonable person would perceive the environment to be hostile and abusive." *Id.* (citing *Mendoza*, 195 F.3d at 1246; *Faragher*, 524 U.S. at 788). There is sufficient evidence that Williams subjectively perceived her environment to be hostile and abusive; therefore, we examine whether that perception was objectively reasonable.

In this circuit, there are "four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.  These four factors, however, are not exclusive. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997).  This Court "should examine the conduct in context, not as isolated acts, and determine whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." *Mendoza*, 195 F.3d at 1246.

Plaintiff alleges that Hadaway's alleged sexual harassment included:

(1) daily comments such as:

-Here's a box of condoms, do you want to go use them?
-How about I throw you on the counter and we go for it now?
-Can I nibble your neck?
-What about I nibble your neck for a while?
-Let's go mess around after work.
-Do you want to go mess around for a while?
-What would it take for you to sleep with me today?
-What would you do if I kissed you?
-Today would be a good day to mess around because we are short on staff today and nobody would catch us.
-If the [team of coworkers] was not over there, I would throw you on the floor and we could work out our frustrations right now;

(2) physical touching on a regular basis, which included: tickling her side on three or four occasions, hugging her from behind, putting his arms around her and letting his hands slide down towards her breasts, and massaging her shoulders; and (3) one particularly egregious incident in May 2006 when Hadaway approached Plaintiff in the receiving area, sat behind her on a stool, straddled her, grabbed her and pulled her close, wrapped his arms around her, and touched her butt and breasts.  The totality of this conduct occurred over a time period of approximately fifteen months.

K-Mart concedes that Williams has testified that the alleged harassment occurred frequently, but contends that summary judgment is due to be granted in its favor because Hadaway's alleged misconduct was not severe and did not unreasonably interfere with Plaintiff's job performance.  (Doc. 22 at 23-26.)  Defendant argues that Hadaway's alleged comments are not as vulgar as those made in some hostile environment cases, and the alleged touchings were not physically threatening or as abusive as those addressed in other cases.  K-Mart also maintains that the alleged harassment did not alter the terms and conditions of Plaintiff's employment because she continued to excel at her job performance and attendance, and even managed to go to school while balancing her work load.  The Court rejects Defendant's premise.

Viewing the evidence in the light most favorable to the plaintiff, Hadaway's conduct included daily, overt sexual remarks and frequent forcible touching that went well beyond what could be argued was an accidental or casual "brush."  These were not occasional or isolated incidents, and a reasonable jury could conclude that they were humiliating to the plaintiff.  Taken individually, each comment and/or touching, aside

from the May 2006 incident, may not be severe, but "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Reeves v. C.H. Robinson Worldwide, Inc.*, — F.3d —, 2010 WL 174074 at *6 (11th Cir. Jan. 20, 2010) (internal quotations omitted).  K-Mart's focus on individual factors from the four factors outlined in *Mendoza* loses sight of this approach.  Moreover, "[e]ither severity *or* pervasiveness is sufficient to establish a violation of Title VII."  *Id.* (emphasis in original).  And, "the Supreme Court has cautioned that harassment need not be shown to be so extreme that it produces tangible effects on job performance in order to be actionable."  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1277 (11th Cir. 2002). "[F]ailure to establish convincingly [that an alleged harasser's] conduct interfered with [job] duties is not fatal to [a] hostile environment claim, given the totality of the circumstances."  *Id.*  Considering the circumstances as a whole, a reasonable jury could very well conclude that Hadaway's conduct was sufficiently severe or pervasive to create a hostile or abusive working environment.

3.     Liability.

K-Mart also argues that Williams failed to establish that it can be held responsible for a hostile work environment.  When alleged harassment is committed by a coworker, "a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action."  *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003) (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000)). "Actual notice is established by proof that management knew of the harassment."  *Id.* (citing Miller, 277 F.3d at 1278).  "When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established."  *Id.* (citing *Breda*, 222 F.3d at 889; *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1364 (11th Cir. 1999)).  "Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it."  *Id.*  Plaintiff contends that K-Mart had both actual and constructive notice of Hadaway's harassment.  Because the Court finds

it clear that there are genuine issues of material fact whether Defendant

had at least constructive notice of sexual harassment by Hadaway and failed

to take immediate and appropriate action, it is unnecessary, at this time,

to address the issue of whether Defendant had sufficient actual notice to

support Williams's Title VII claim.

Defendant maintains that K-Mart could not be placed on constructive

notice of alleged sexual harassment because it had an "established anti-

harassment policy." (Doc. 22 at 30.) In *Farley v. Amer. Cast Iron Pipe Co.*,

115 F.3d 1548 (11th Cir. 1997), the Eleventh Circuit Court of Appeals held

that a "valid, effective, and well-disseminated policy prohibiting sexual

harassment" precluded a finding of constructive knowledge.  *Id*. at 1553.

The court reasoned that the employer has an:

> obligation to make reasonable efforts to know "what
> is going on" with respect to its own employees.
> Where there is no policy, or where there is an
> ineffective or incomplete policy, the employer
> remains liable for conduct that is so severe and
> pervasive as to confer constructive knowledge.
> Where there exists an effective policy such as that
> present in the instant action, however, we conclude
> that the employer has made reasonably diligent
> efforts to learn and know of the conduct of its
> employees.  Stated differently, we believe that once

> a company has developed and promulgated an
> effective and comprehensive anti-sexual harassment
> policy, aggressively and thoroughly disseminated the
> information and procedures contained in the policy
> to its staff, and demonstrated a commitment to
> adhering to this policy, it has fulfilled its obligation
> to make reasonably diligent efforts to "know what is
> going on" within the company; beyond this point, it
> is incumbent upon the employees to utilize the
> procedural mechanisms established by the company
> specifically to address problems and grievances.

*Id.* at 1554.  However, the Eleventh Circuit later qualified that its decision

in *Farley* was "compelled by the specific facts in that case."  *Watson v. Blue*

*Circle, Inc.*, 324 F.3d 1252, 1260 (11th Cir. 2003).  When a reasonable jury

can conclude a defendant did not "adequately investigate and respond to

harassment complaints," or "take[] harassment complaints seriously," the

effectiveness of the company's sexual harassment policy is challenged and

summary judgment is inappropriate.  *Id.* at 1261-62.

Like the sexual harassment policy in *Watson*, there is no question that

K-Mart's sexual harassment policy was disseminated to employees.  It is

undisputed that employees, including Williams, received a copy of the policy

when they began working for the company.  However, "the fact that [K-

Mart's] policy was well-disseminated, standing alone, is not sufficient to

entitle [K-Mart] to rely on the policy's procedural framework to remain apprised of the conduct of [K-Mart] employees." *Id*. at 1260.  The Court finds that there are genuine issues of material fact whether the defendant took harassment complaints seriously during Plaintiff's employment.

There is evidence in the record from which a reasonable jury could infer that both Smith and Frankie Williams told Allen there were complaints about sexual harassment in the Jasper store.   In response to Frankie Williams's notice that women were having problems with Hadaway, Allen responded that "he didn't know what he was going to do with that boy." The evidence appears to show that Allen did nothing.  Allen does not deny these conversations occurred, but he testified he does not remember them. When Allen later claimed that July 2006 was the first he heard there were complaints of sexual harassment by Hadaway, Frankie Williams, an assistant manager, countered that he did know because she told him.  Moreover, even Jackson, an assistant manager who eventually sought written statements by Williams and White, testified that after he started working at the Jasper store in early 2006, "[r]umors were going through the store flying off the handle [about Hadaway]," and Frankie Williams told him "there has been

complaints around here all day about [Hadaway] sexually harassing females." Yet, Jackson felt he should not look into the matter further; he would not take action until someone came to him with concrete details. When Jackson got those details in writing, Allen refused to look at the complaints because they were not brought to him directly. White also told Jackson she complained to Allen about Hadaway's conduct in the past and nothing was done. Based on this and other evidence in the record, a reasonable jury could conclude that K-Mart does not adequately investigate or respond to allegations of sexual harassment in the workplace, and K-Mart's anti-sexual harassment policy is ineffective. Therefore, K-Mart's anti-harassment policy does not preclude the defendant from being charged with constructive notice.

Because there is also sufficient evidence in the record for a jury to infer that K-Mart reasonably should have known that Hadaway was sexually harassing female employees at the Jasper store and failed to take immediate and appropriate corrective action, Defendant has failed to establish it is entitled to summary judgment with regard to Plaintiff's hostile environment claim. *See, e.g., Watson*, 324 F.3d at 1262-63.

B.      Alabama State Law Claims.

Plaintiff also asserts state law claims of invasion of privacy, outrage, and negligent/wanton supervision, training, and retention.

1.      Invasion of Privacy.

Under Alabama law, actions constituting an invasion of privacy include: "intrusion upon the plaintiff's physical solitude or seclusion, (2) publicity which violates the ordinary decencies, (3) putting the plaintiff in a false but not necessarily defamatory position in the public eye, and (4) the appropriation of some element of the plaintiff's personality for a commercial use. *Busby v. Truswal Sys. Corp.*, 551 So.2d 322, 322 (Ala. 1989) (internal quotations omitted).  "The wrongful intrusion prong of the tort of invasion of privacy has been defined as the intentional interference with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns." *Id.* at 323 (internal quotations omitted). K-Mart argues that Plaintiff cannot establish Hadaway wrongfully intruded upon her physical solitude or seclusion, and assuming such an intrusion occurred, K-Mart cannot be held liable.

Defendant contends that Williams did not suffer a wrongful intrusion into her physical solitude or seclusion because Hadaway's alleged comments did not address her personal life.  (Docs. 22 at 36; 31 at 19.)  Alabama law, however, does not limit the tort of invasion of privacy solely to intrusive questions about an individual's personal life.  In *Busby v. Truswal Systems Corp.*, 551 So.2d 322 (Ala. 1989), the Alabama Supreme Court found that a reasonable jury could conclude that the following conduct constitutes an invasion of privacy by an alleged harasser: (1) an invitation to swim together nude in a pool; (2) saying his hands were cold and asking if he could put them in an employee's pockets to keep them warm; (3) telling employees that he would "put a stick on their machines" so they could masturbate while working; (4) saying he could perform intercourse as fast as one of the machines at the plant could operate; (5) saying that he wished employees would come to work braless and wear less clothing; (6) telling an employee that if she had not stayed up all night having sex she could do her work properly; (7) telling an employee that if she would give him thirty minutes with her that he would fill her pants in nine months for her; (8) acting as if he was going to pinch an employee's breasts with a pair of pliers and with

his hands; (9) saying he should send one of the employees across the street to where a group of men were standing because she stayed sexually aroused all of the time; (10) telling an employee that he was very tired and asking her if she would accompany him to the restroom and hold his penis while he urinated; (11) telling an employee that her nipples were as large as another employee's entire breasts; (12) attempting to follow an employee into the restroom and when she asked him where he was going, saying that he was going to help her; (13) following an employee one night; (14) saying that a table in his office had been damaged when one of the employees and a male co-employee had sex on top of it; (15) openly staring at an employee's sexual anatomy; (16) putting his arm around an employee, grabbing employees' arms, and stroking their necks; and (17) making other lewd remarks and gestures to employees.  *Id*. at 324.  Because the harasser's actions in *Busby* are substantially similar to the misconduct alleged by the plaintiff in this action, the Court concludes that genuine issues of fact exist whether Hadaway intruded into Williams's physical solitude or seclusion in an offensive, objectionable, or humiliating manner.

Hadaway, however, is not a named defendant in this action.  In order for K-Mart to be liable for Hadaway invading Williams's privacy, Plaintiff "must offer evidence that the agent's wrongful acts were in the line and scope of his employment, or that the acts were in furtherance of the business of [the defendant], or that [the defendant] participated in, authorized, or ratified the wrongful acts."  *Id.* at 326 (internal citations omitted).  A question of fact exists regarding employer ratification when the defendant has "sufficient information to alert him to the possibility that [the alleged harasser] was engaging in acts that would constitute an invasion of the plaintiff['s] privacy," but the defendant failed to take "effective action . . . to stop that conduct." *Id.* at 327.  Plaintiff testified that she complained to Frankie Williams, an assistant manager, about comments Hadaway made and about him touching her.  Based on this and other evidence in the record, including purported notices to Allen regarding Hadaway's conduct, a reasonable jury could infer that K-Mart management had knowledge Hadaway was engaging in behaviors that constitute an invasion of female employees' privacy.  Viewing the evidence in the light most favorable to the plaintiff, K-Mart failed to investigate and take

effective action to stop Hadaway's misconduct, thereby ratifying Hadaway's actions.   For these reasons, summary judgment must be denied on this claim.

    2.    Outrage.

"The tort of outrageous conduct was first recognized by [the Alabama Supreme] Court in *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1981), in which the Court held that 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.'" *Busby*, 551 So. 2d at 324.   "In order for a plaintiff to recover, the conduct of the defendant must be 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id*. (quoting *Am. Rd. Serv. Co.*, 394 So. 2d at 365).   In *Busby*, the Alabama Supreme Court concluded that the harasser's actions outlined above "rose to this level" of outrageous conduct.  *Id*.  Because the conduct is substantially similar to what is alleged in this case, this Court makes the same determination.

Like the plaintiffs in *Busby*, however, Williams has not adduced sufficient evidence to show that K-Mart management was aware of the details that make Hadaway's conduct outrageous.  "The tort of outrage provides a remedy for 'extreme and outrageous conduct,' and so should not be the basis for vicarious or *respondeat superior* liability except in the most compelling circumstances."  *Id*. at 327.  "The tort of outrage carries punitive damages, which should not ordinarily be imposed against an employer for the personal sexual transgressions of its employees."  *Id*. at 328.   As decided above, there is sufficient evidence Defendant had knowledge Hadaway was engaging in sexually harassing conduct toward female employees at the Jasper store, and that harassment included offensive comments and physical touching.  However, there is no evidence Hadaway was acting in the line and scope of his employment or in furtherance of K-Mart's business while doing so, or that K-Mart knew "the details or the full extent of the conduct."  *Id*.  Therefore, K-Mart cannot be held liable for Hadaway's alleged outrageous actions, and summary judgment must be granted.

3.      Negligent or Wanton Supervision and Retention.

Finally, Plaintiff argues that K-Mart is liable for negligent or wanton

supervision and retention.[3]  The Alabama Supreme Court has held that:

> In the master and servant relationship, the master is
> held responsible for his servant's incompetency when
> notice or knowledge, either actual or presumed, of
> such unfitness has been brought to him. Liability
> depends upon its being established by affirmative
> proof that such incompetency was actually known by
> the master or that, had he exercised due and proper
> diligence, he would have learned that which would
> charge him in the law with such knowledge. It is
> incumbent on the party charging negligence to show
> it by proper evidence. This may be done by showing
> specific acts of incompetency and bringing them
> home to the knowledge of the master, or by showing
> them to be of such nature, character, and frequency
> that the master, in the exercise of due care must
> have had them brought to his notice. While such
> specific acts of alleged incompetency cannot be
> shown to prove that the servant was negligent in
> doing or omitting to do the act complained of, it is

---

[3]The Court finds that Williams's claim of negligent or wanton training is abandoned because she fails to mention or make any argument regarding that claim in her response to Defendant's motion for summary judgment.  *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")

> proper, when repeated acts of carelessness and
> incompetency of a certain character are shown on
> the part of the servant to leave it to the jury
> whether they would have come to his knowledge,
> had he exercised ordinary care.

*Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 987 (Ala. 1999) (quoting *Thompson v. Havard*, 235 So. 2d 853 (Ala. 1970)).  Viewing the evidence in the light most favorable to the plaintiff, genuine issues of material fact exist whether K-Mart knew or should have known of Hadaway's tortious conduct and failed to investigate or take appropriate disciplinary measures, including termination.

K-Mart contends that it cannot be held liable for wantonness. Wantonness is defined by Alabama statute as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." *Machen*, 761 So. 2d at 987 (citation omitted).  It is "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Id.* (citation omitted).  "[I]t is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *Id.* (citation omitted).  Evidence shows that despite

widespread rumors and oral complaints of sexual harassment and possible tortious conduct on the part Hadaway, K-Mart management refused to investigate or take any action to stop the conduct until written complaints were submitted and the district manager was notified.  Even after written complaints were made, the store manager refused to look at them because they were not given to him first.  This evidence compels a finding that allows Plaintiff's wantonness claims to be decided by a jury.

V.     Conclusion.

For the reasons stated above, Defendant's motion for summary judgment is due to be granted in part and denied in part.  A separate order will be entered.

Done this 10th day of February 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297